# United States District Court, Northern District of Illinois

| Name of Assigned Judge or Magistrate Judge | **WILLIAM T. HART** | Sitting Judge if Other than Assigned Judge | |
|---|---|---|---|
| **CASE NUMBER** | 00 C 3765 | **DATE** | **MAY** 16, 2001 |
| **CASE TITLE** | UNITED STATES OF AMERICA ex rel. SHERMAN GIBSON v. ROGER D. COWAN, Warden | | |

**MOTION:**

[In the following box (a) indicate the party filing the motion, e.g., plaintiff, defendant, 3rd party plaintiff, and (b) state briefly the nature of the motion being presented.]

**DOCKET ENTRY:**

(1) ☐ Filed motion of [ use listing in "Motion" box above.]

(2) ☐ Brief in support of motion due _____.

(3) ☐ Answer brief to motion due_____. Reply to answer brief due_____.

(4) ☐ Ruling/Hearing on _____ set for _____ at _____.

(5) ☐ Status hearing[held/continued to] [set for/re-set for] on _____ set for _____ at _____.

(6) ☐ Pretrial conference[held/continued to] [set for/re-set for] on _____ set for _____ at _____.

(7) ☐ Trial[set for/re-set for] on _____ at _____.

(8) ☐ [Bench/Jury trial] [Hearing] held/continued to _____ at _____.

(9) ☐ This case is dismissed [with/without] prejudice and without costs[by/agreement/pursuant to]
☐ FRCP4(m) ☐ General Rule 21 ☐ FRCP41(a)(1) ☐ FRCP41(a)(2).

(10) ■ [Other docket entry] Petition for a writ of habeas corpus is denied. The Clerk of the Court is directed to enter judgment in favor of respondent and against petitioner denying the petition for writ of habeas corpus. If petitioner wishes to appeal this order, he must file a Notice of Appeal to the U.S. Court of Appeals for the Seventh Circuit with the Clerk of the Court, U.S. District Court for the Northern District of Illinois, 219 S. Dearborn St., 20th Floor, Chicago, IL 60604, within thirty (30) days of the entry of the judgment in this case. Any notice of appeal should also be accompanied by a request for a certificate of appealability, including a statement as to why a certificate should issue. See 28 U.S.C. § 2253; Fed. R. App. P. 22(b).

(11) ■ [For further detail see order attached to the original minute order.]

| | | | | |
|---|---|---|---|---|
| | No notices required, advised in open court. | | 3 | Document Number |
| | No notices required. | | number of notices | |
| ✓ | Notices mailed by judge's staff. | | MAY 1 7 2001 | |
| | Notified counsel by telephone. | | date docketed | |
| | Docketing to mail notices. | | | 23 |
| ✓ | AO 450 form. mailed by judge's staff | | docketing deputy initials | |
| | Copy to judge/magistrate judge. | | 5/16/2001 | |
| CW | courtroom deputy's initials | FILED FOR DOCKETING 01 MAY 16 PM 5: 21 | date mailed notice | |
| | | Date/time received in central Clerk's Office | mqm mailing initials | |

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

UNITED STATES ex rel.        )
SHERMAN GIBSON,              )
                             )
            Petitioner,      )
                             )
      v.                     )        No. 00 C 3765
                             )
ROGER D. COWAN, Warden,      )
                             )
            Respondent.      )

DOCKETED
MAY 1 7 2001

## MEMORANDUM OPINION AND ORDER

Sherman Gibson is before this court on a petition for writ of habeas corpus challenging his conviction for murder. He contends that he received ineffective assistance of counsel in that trial and appellate counsel failed to adequately protect his speedy trial rights.

On October 15, 1985, Stateville Correctional Center inmate Leon Smallwood was found in his cell, with a fatal stab wound to the chest. In the Circuit Court of Will County, Illinois, Stateville inmates Gibson, Robert Lofton, and Vernon Hicks were charged with the murder of Smallwood. Gibson was granted a severance and tried separately. A public defender was initially appointed to represent Gibson, but Gibson subsequently moved to represent himself. The court granted that motion and initially appointed the public defender as standby counsel. On the public defender's motion, however, the court ruled that there

was no authority to appoint the public defender as standby counsel and Gibson chose to proceed on his own. Following his first trial, the jury could not reach a unanimous verdict and a mistrial was declared. At his second trial, Gibson proceeded pro se until the jury returned a verdict of guilty. Counsel then represented him during the death penalty phase and on appeal. On direct appeal, the Illinois Supreme Court reversed and remanded on the ground that the trial court had discretion to appoint the public defender or another attorney as standby counsel. People v. Gibson, 136 Ill. 2d 362, 556 N.E.2d 226, 231-35 (1990). Gibson's contentions as to the insufficiency of the evidence, which were argued by appellate counsel, were rejected. Id. at 235. Gibson's pro se contention that he was denied his statutory right to a speedy trial was rejected on the ground that his trial commenced within 160 days of his demand for trial. Id. In his pro se appellate brief, Gibson also asserted that his federal constitutional right to a speedy trial was denied. The Illinois Supreme Court declined to consider this contention because not supported by an argument. Id.

The Illinois Supreme Court's mandate was issued on June 28, 1990 and received by the Will County Circuit Clerk on July 2, 1990.[1] A status hearing was held on July 13, 1990 at which a status hearing was set for September 7, 1990 and the

---

[1]The entire state court record has not been provided. The dates of court appearances and filings, however, are not in dispute.

trial for September 10, 1990.  By July or September 1990, Edward

Jaquays, a part-time public defender, had been appointed to

represent Gibson.  At the September 7, 1990 status hearing,

Jaquays represented that he had not received all the discovery

materials and a status hearing was set for December 7, 1990.  At

a subsequent hearing on the speedy trial issue, though, Jaquays

testified that he was familiar with the facts underlying Gibson's

case because he had represented Lofton as to the murder charge

against Lofton.  A number of witnesses had been interviewed

during the investigation of Smallwood's murder and the discovery

to be provided in the criminal case was voluminous.  However,

Jaquays testified that he had most of the discovery from

representing Lofton and only needed any possible additional

documents that had not been provided in Lofton's case and copies

of the transcripts of Gibson's first two trials.  Although the

prosecution represented that the discovery had to be recreated

because Gibson had not returned it following the pro se trials,

no evidence supported this contention and Jaquays testified that

the prosecutors had the boxes of discovery.[2]  R. 4164.  It was

only a question of the prosecution placing the documents in

chronological order and making a copy of the transcripts.

Jaquays admitted he could have obtained the transcripts from the

public record and that he always had access to what was needed to

_____

[2]Gibson testified that the discovery was stored by the
Department of Corrections and that he had only limited access to
it.  He no longer had access to it after the completion of his
second trial.

prepare for trial. R. 4164-65, 4168-69. Jaquays never moved to compel the prosecution to formally provide the discovery because he thought delay might work to Gibson's advantage, for example, if the delay resulted in prosecution witnesses not being available. R. 4148, 4165.

On September 12, 1990, Jaquays filed a motion on Gibson's behalf to have him removed from death row. A hearing was set for December 7, 1990. On October 17, 1990, a hearing was held as to the Department of Corrections' motion to intervene, which was denied. On that date, Gibson's motion for a psychological examination was granted. On December 7, the prosecution moved for a psychological examination of Gibson. A hearing was set for December 27, 1990. On that date, the matter was continued to January 18, 1991 on which date the death row motion was denied. At the speedy trial hearing, Jaquays testified that Gibson wanted him to continue to pursue the death row motion. R. 4147, 4156. Gibson denied that, contending that he instructed Jaquays to drop the motion because he recognized that the new trial (which would resolve whether he should remain on death row) could be completed sooner than the death row motion would be resolved and he also recognized that the trial judge had indicated he was unlikely to grant the motion. R. 4123-24.

After January 18, 1991, no further action was taken in the case until, on April 12, 1991, the trial judge, on his own motion, set the case for an April 18, 1991 status hearing. The case was continued to June 10, 1991 because the discovery had not

yet been provided.  On June 10, the case was continued to
August 16, 1991.

At the speedy trial hearing, Gibson testified that he
attempted to invoke his speedy trial rights from the beginning,
but that Jaquays told him he needed discovery so Gibson did not
pursue the issue.  R. 4121.  Jaquays testified that Gibson
initially requested a speedy trial, but then accepted Jaquays
advice that delay could work to his benefit and that there was no
urgency for a trial since, even if acquitted, Gibson would remain
in prison on his prior conviction.  According to Jaquays, after
the denial of the death row motion, Gibson again brought up the
speedy trial issue, but vacillated and never insisted that
Jaquays invoke it until shortly before the August 16, 1991
hearing.  R. 4147-51.  Gibson testified that, sometime after the
January 18, 1991 hearing, he sought to talk to Jaquays about
invoking speedy trial rights.  Jaquays sent his investigator to
talk to Gibson[3] and Gibson told the investigator to tell Jaquays
to invoke his speedy trial rights.  R. 4127.  Jaquays did not
recall such a communication.  R. 4170.  However, the investigator
was called in to testify and his records confirmed that the
conversation with Gibson occurred on May 15, 1991 and that the
investigator sent Jaquays a May 26, 1991 letter informing Jaquays
that Gibson desired to invoke his speedy trial rights.
R. 4184-86.

---

[3]Gibson wanted to discuss his case in person because
conversations on the prison telephones were recorded.

On August 5, 1991, Gibson informed Jaquays that he desired to bring a motion to discharge the indictment on the ground that more than 160 days had run since the remand from the Illinois Supreme Court. Jaquays advised him that the 160 days had not run because Jaquays, on Gibson's behalf, had agreed to the continuances for discovery. R. 4133-34, 4152, 4154-55.

At the August 16, 1991 status hearing, Jaquays provided the court with Gibson's pro se motion to discharge, which contended that the speedy trial time had run since it was more than 160 days after the July 2, 1990 return of the mandate. Additionally, Gibson orally contended that Jaquays had provided ineffective assistance by failing to pursue the speedy trial issue and instead agreeing to continuances. Because of the potential conflict of interest, Kenneth Grnacek was specially appointed to represent Gibson as to the motion to discharge and allegations of ineffective assistance. With Grnacek representing Gibson, a supplemental motion to discharge[4] was filed and evidence and arguments were heard on September 6 and 9, 1991.[5]

On September 9, 1991, the court ruled as follows:

> . . . It's the ruling of the Court that no matter how you—what way you calculate this, there has been no violation of the speedy trial rules, and the Court further finds that there's been no showing of ineffective assistance of counsel.

---

[4]Both the pro se motion and supplemental motion make passing reference to the constitutional right to a speedy trial. Both, however, only make arguments regarding Gibson's rights under Illinois statutory law.

[5]The previously cited testimony is from this hearing.

- 6 -

> Everything was trial strategy and tactics, and
> the things were done to the defendant's best
> interest by Mr. Jaquays. So, his motion for
> discharge and for removal of Mr. Jaquays is all
> denied.

R. 4201-02.

Thereafter, Jaquays continued to represent Gibson. On
September 10, 1991, trial was set for November 12, 1991. That
trial date, however, was again postponed.[6] Gibson continued to
press his contention that his speedy trial rights were denied,
apparently including a contention that, even if he waived the
delays through August 16, 1991, he still was not tried within 160
days thereafter. See R. 8805-07 (hearing on motion for a new
trial); Amended Post-Conviction Petition at 2. The trial did not
commence until early May 1992. On June 8, 1992, following a jury
trial, Gibson was found guilty. On July 29, 1992, Gibson was
sentenced to natural life in prison. R. 8809. Attorneys other
than Jaquays represented Gibson on direct appeal. No speedy
trial issue was raised on direct appeal and Gibson's conviction
and sentence were affirmed by an unpublished order dated
April 25, 1995. The Illinois Supreme Court denied leave to
appeal.

Gibson petitioned for post-conviction relief and counsel
was appointed who filed an amended petition. It was contended

---

[6]Allegations as to a trial being set for November 12,
1991 are contained in the amended post-conviction petition.
Neither party provides a specific explanation for the additional
delays.

that ineffective assistance of counsel at the trial and appellate level resulted in the denial of Gibson's statutory and constitutional rights to a speedy trial.[7] The state moved to dismiss the petition. No additional evidence was presented in support of the petition, but the court did hear oral arguments as to the motion to dismiss. R. 8906-8920. The court's subsequent oral ruling was as follows:

> . . . I have taken a look at all the case law and motions and petitions and considered the arguments of counsel and matters presented to the court, and I am constrained, pursuant to provisions of <u>Strickland v. Washington</u>, 466 U.S. 668; <u>People v. Johnson</u>, 151 Ill. 2d 227, to grant the People's motion to dismiss. Therefore, the pending post-conviction petition is dismissed.

R. 8924.

Gibson appealed the denial of post-conviction relief and was again represented by counsel. The statutory and constitutional speedy trial issues were raised on appeal, but not the juror issue. The argument on appeal[8] focused entirely on whether Gibson's speedy trial rights were violated as of September 1991 or earlier. No argument was made in the post-conviction appeal regarding the further delays after September 9, 1991.

---

[7]It was also alleged that counsel was ineffective for failing to raise the contention that an African-American was improperly excluded from the jury.

[8]The only brief provided is Gibson's attorney-drafted opening brief. The state's brief is not provided, nor any reply that may have been filed on Gibson's behalf.

In an unpublished order filed March 10, 1999, the Illinois Appellate Court affirmed the denial of post-conviction relief. In that order, Jaquays's testimony was described as follows:[9]

> The defendant's trial attorney testified at the evidentiary hearing held on the defendant's post-conviction petition. He told the court that he and the defendant had many discussions regarding the defendant's right to a speedy trial and whether that right should be exercised. The attorney stated that he advised the defendant that there were reasons to delay the trial. One of these reasons was the amount of discovery that needed to be completed. Another reason was the difficulty a delay might place upon the State to find witnesses. The attorney told the defendant of a case he had defended in which a lengthy delay led to a dismissal of the charges. According to the defendant's attorney, each time they discussed the defendant's speedy trial right, the defendant acquiesced in the attorney's recommendation that the right not be exercised. The only time the defendant clung to his wish to have a speedy trial was when the defendant filed his pro se motion in August 1991.
> At the conclusion of the evidentiary hearing, the trial judge denied the defendant's petition for post-conviction relief.

People v. Gibson, No. 3-97-498 at 2-3 (Ill. App. Ct. 3d Dist. March 10, 1999) ("Gibson III").

The Illinois Appellate Court held that the speedy trial time began to run upon the issuance of the Supreme Court mandate,

---

[9]As did Gibson's counsel in the appellate brief, the Illinois Appellate Court incorrectly describes Jaquays's testimony as occurring during an evidentiary hearing on the post-conviction petition. The hearing, however, occurred on September 6, 1991, during pretrial proceedings prior to Gibson's third trial.

but that the right to a speedy trial may be waived.  <u>Id.</u> at 3.

As to Gibson's contentions, it held:

> The defendant argues first that his speedy
> trial right was violated when the State failed to
> try him within the time provided by the speedy
> trial statute.  It is clear, however, from the
> testimony of the defendant's trial attorney, that
> the lengthy delays were due to the large amount
> of discovery which needed to be conducted.
> Clearly, the defendant agreed to these delays,
> and, therefore, during these delays the speedy
> trial period was tolled.  See 725 ILCS 5/103-5
> (West 1996).  Further, the record establishes
> that the defendant chose to waive his right to a
> speedy trial in the hope that a lengthy delay
> would irretrievably damage the State's case.
> Moreover, the record makes it abundantly
> clear that the decision not to move for a speedy
> trial was not the result of actual incompetence
> on the part of his trial attorney.  Instead, it
> was a calculated risk taken to challenge the
> State's ability to produce the witnesses it would
> need to prove the defendant guilty beyond a
> reasonable doubt.
> Consequently, we find, from the evidence
> presented at the hearing on the defendant's post-
> conviction petition, that the defendant waived
> his right to a speedy trial.  Further, we find
> that this waiver was the result of considered
> trial strategy and is not an appropriate subject
> for a claim of ineffective assistance of counsel,
> whether trial or appellate.  Thus, we hold that
> the trial court's decision to deny the
> defendant's post-conviction petition was not
> manifestly erroneous.

<u>Id.</u> at 4-5.

On October 6, 1999, the Illinois Supreme Court denied

leave to appeal.  On June 21, 2000, Gibson filed his <u>pro se</u>

federal petition for writ of habeas corpus.  In this petition, he

again raises the speedy trial issues as claims of ineffective

assistance of trial and appellate counsel.  He appears to have

taken the brief filed on his behalf in the Illinois Appellate
Court and to have modified it to make it his federal habeas
corpus petition.  The petition here, including its supporting
statement of facts and memorandum of law, as well as Gibson's
reply brief, only raise arguments regarding whether his speedy
trial rights were violated as of September 1991 or earlier.
Respondent concedes that Gibson's state court remedies have been
exhausted and there is no contention that any issue presently
raised has been procedurally defaulted.  Pointing to the
deference owed the Illinois Appellate Court's legal conclusions
and factual findings, see 28 U.S.C. §§ 2254(d)-(e), respondent
contends there is no basis for granting relief.  Gibson contends
that the Illinois Appellate Court's factual findings are not
supported by the record.  Even accepting the Illinois Appellate
Court's facts, Gibson contends there is legal error because
Jaquays's strategy of delaying in the hopes of a state witness
being unavailable was unethical behavior and therefore could not
have been effective representation.

        To prevail on his ineffective assistance of counsel
claim, Gibson must show both that the performance of one of his
attorneys fell below an objective standard of reasonableness and
that the deficient performance caused him prejudice.  See
Strickland v. Washington, 466 U.S. 668, 687-88 (1984);
Montenegro v. United States, ___ F.3d ___, 2001 WL 378391 *2 (7th
Cir. April 16, 2001); Anderson v. Sternes, 243 F.3d 1049, 1057
(7th Cir. 2001); United States v. Asubonteng, 895 F.2d 424, 428

(7th Cir.), cert. denied, 494 U.S. 1089 (1990).  To satisfy the
prejudice component, it must be shown "that there is a reasonable
probability that, but for counsel's unprofessional errors, the
result of the proceeding would have been different.  A reasonable
probability is a probability sufficient to undermine confidence
in the outcome."  Strickland, 466 U.S. at 694.  United States v.
Ruzzano, ___ F.3d ___, 2001 WL 355727 *6 (7th Cir. April 4,
2001); Anderson, 243 F.3d at 1057; Asubonteng, 895 F.2d at 428.

          To the extent that the state court reached the merits of
Gibson's claim, relief can only be granted if (1) the state
court's decision "was contrary to, or involved an unreasonable
application of, clearly established Federal law, as determined by
the Supreme Court of the United States; or (2) resulted in a
decision that was based on an unreasonable determination of the
facts in light of the evidence presented in the State court
proceeding."  28 U.S.C. § 2254(d); Kapadia v. Tally, 229 F.3d
641, 644 (7th Cir. 2000); Alvarez v. Boyd, 225 F.3d 820, 824 (7th
Cir. 2000), cert. denied, 121 S. Ct. 1192 (2001).  A state court
determination is an unreasonable application of Supreme Court
precedent if the state court identifies the governing legal
principle, but unreasonably applies that principle to the facts
of the case.  Morgan v. Krenke, 232 F.3d 562, 565 (7th Cir.
2000), cert. denied, 121 S. Ct. 1423 (2001) (quoting Williams v.
Taylor, 120 S. Ct. 1495, 1523 (2000)).  "Unreasonableness is
judged by an objective standard, and under the 'unreasonable
application' clause, 'a federal habeas corpus court may not issue

the writ simply because that court concludes in its independent judgment that the relevant state-court decision applied clearly established federal law erroneously or incorrectly. Rather, that application must also be unreasonable.'" Morgan, 232 F.3d at 565-66 (quoting Williams, 120 S. Ct. at 1522). This standard applies to both pure questions of law and mixed questions of law and fact. Kapadia, 229 F.3d at 644; Sanchez v. Gilmore, 189 F.3d 619, 623 (7th Cir. 1999), cert. denied, 529 U.S. 1089 (2000). The unreasonable determination of facts prong must be considered along with § 2254(e)(1), which provides that "a determination of a factual issue made by a State court shall be presumed to be correct. The applicant shall have the burden of rebutting the presumption of correctness by clear and convincing evidence." See Kapadia, 229 F.3d at 644; Sanchez, 189 F.3d at 623.

The facts recited in Gibson III are not in all respects supported by the record. However, it was not clear error for the Illinois Appellate Court to accept, as the trial judge apparently had, the testimony of Jaquays over the testimony of Gibson. Therefore, it must be taken as true that Gibson agreed that the death row motion be pressed until it was denied. Also, it must be taken as true that, initially, Gibson accepted Jaquays's advice that it was best not to press for a trial or compel discovery in the hope that delay would work to Gibson's advantage. The Illinois Appellate Court, though, found that this continued until approximately August 16, 1991. However, Gibson testified that, prior to his August 5, 1991 conversation with

Jaquays, he had requested, through the investigator, that Jaquays press his speedy trial rights and demand trial. While Jaquays did not recall that communication, it is supported by the investigator's testimony as well as documentary evidence consisting of the investigator's notes and a copy of the letter he sent to Jaquays. Clear and convincing evidence rebuts the state court finding. It must be assumed that Gibson requested invocation of his speedy trial rights as of May 1991, not as of August 1991. Gibson III also recites that delays were caused by the need for discovery. However, it was Jaquays's unrefuted testimony that, from early in his representation, he had virtually all the information he needed and that any additional discovery documents were in the hands of the prosecution and readily available. Clear and convincing evidence rebuts the finding that delays were necessitated by the extensiveness of the discovery. It still must be determined whether these factual changes materially affect Gibson III's legal conclusions.

As to the statutory right to a speedy trial, the Illinois Appellate Court held that the time period was tolled by Gibson's agreement to extensions and that the rights were waived by his chosen strategy of seeking the benefits of delay.[10] This court must defer to the Illinois Appellate Court's decisions as to state law. See Estelle v. McGuire, 502 U.S. 62, 67-68 (1991);

---

[10]As to Gibson's statutory rights, the state law ruling must be accepted that this constitutes a waiver, regardless of whether it also constitutes a violation of an applicable ethical rule as Gibson contends.

Jones v. Thieret, 846 F.2d 457, 461 (7th Cir. 1988); Brown v. Stemes, 2001 WL 417767 *10 (N.D. Ill. April 20, 2001). Even if this court is permitted to view this issue in light of the different facts presently taken as true, there is no cognizable ineffective assistance of counsel claim. Even taking as true that Jaquays learned in late May 1991 that Gibson desired to invoke his speedy trial rights and assuming that Jaquays's performance was deficient for failing to thereafter promptly pursue those rights, Gibson still would not satisfy the prejudice component of his ineffective assistance of counsel claim. If a motion to discharge had been brought at the June 10, 1991 hearing (a continuance to that date having already been by agreement), the time would not yet have run out at that point. There still would have been at least 93 more days available to bring Gibson to trial.[11] There is no reasonable probability that the state would have thereafter allowed the time to run out so that Gibson would have been entitled to have his case discharged.[12] Therefore, the record does not support that any ineffective assistance by Jaquays prevented Gibson from having his case

---

[11]Assuming there was no agreed continuance between the July 2, 1990 filing of the mandate and the agreed continuance on September 7, 1990, 67 days had previously run.

[12]Even making the questionable assumption of a countable delay from June 10, 1991 to September 9, 1991 (the ruling date on the motion to discharge that actually was filed), 160 days would not have run by September 9, 1991. At most, time would have run for 67 days from July 2, 1990 to September 7, 1990 and another 91 days from June 10, 1991 to September 9, 1991 for a total of 158 days.

discharged pursuant to 725 ILCS 5/103-5.  Thus, Gibson cannot
satisfy the prejudice component of an ineffective assistance of
trial counsel or appellate counsel claim based on loss of his
statutory speedy trial rights.  See United States v. Rothrock, 20
F.3d 709, 713 (7th Cir. 1994).  Cf. United States v. Cook, 48
F. Supp. 2d 776, 777 (N.D. Ill. 1999) (no prejudice for purposes
of ineffective assistance of counsel where federal defendant
could not show his indictment would have been dismissed with
prejudice for speedy trial violations).[13]  Gibson has no viable
ineffective assistance of counsel claim based on failure to
adequately invoke his statutory speedy trial rights.

     Gibson also contends that counsel was ineffective for
failing to adequately invoke and argue his federal constitutional
right to a speedy trial.  Although this issue was clearly raised
in the post-conviction appeal, Gibson III does not expressly
address the issue, referring only to the statutory speedy trial
right.  See id. at 4.  Gibson III makes no reference to the usual
factors that are considered for purposes of a constitutional
speedy trial claim.  See Barker v. Wingo, 407 U.S. 514 (1972);
United States v. Ward, 211 F.3d 356, 360-61 (7th Cir. 2000),
cert. denied, 121 S. Ct. 1105 (2001); United States ex rel.
Solomon v. Molina, 1997 WL 51444 *3 (N.D. Ill. Feb. 3, 1997).

---

[13]There is also no contention that any delays harmed
Gibson's defense, for example, by making any of his witnesses
unavailable.  See Asubonteng, 895 F.2d at 429; United States ex
rel. Solomon v. Molina, 1997 WL 51444 *3 (N.D. Ill. Feb. 3,
1997).

Perhaps <u>Gibson III</u> holds that there could not be ineffective assistance regarding Gibson's constitutional speedy trial rights because Gibson waived any such rights by agreeing to the delays as a strategy.  <u>See</u> <u>Gibson III</u>, at 5.  However, it need not be decided if <u>Gibson III</u> resolved the merits of the claim based on constitutional speedy trial rights.  Even considering the legal aspects of this claim <u>de novo</u> without the deference accorded by 28 U.S.C. § 2254(d)(1), Gibson does not present a basis for granting relief.

A four-factor balancing test is employed in determining whether a defendant's Sixth Amendment right to a jury trial has been violated:  "whether delay before trial was uncommonly long, whether the government or the criminal defendant is more to blame for that delay, whether, in due course, the defendant asserted his right to a speedy trial, and whether he suffered prejudice as the delay's result."  <u>Ward</u>, 211 F.3d at 361 (quoting <u>Doggett v. United States</u>, 505 U.S. 647, 651 (1992)).  This test, however, does not come into play unless there is at least a presumption of prejudicial delay.  <u>Barker</u>, 407 U.S. at 530; <u>Rothrock</u>, 20 F.3d at 711-12; <u>United States ex rel. Pruitt v. Page</u>, 2000 WL 1706711 *3 (N.D. Ill. Nov. 14, 2000).  Generally, delay approaching a year or longer will be presumed to be prejudicial.  <u>Ward</u>, 211 F.3d at 361; <u>Pruitt</u>, 2000 WL 1706711 at *3.  Here, Gibson's case had been remanded for more than a year as of the September 1991 resolution of his motion for discharge.

The first factor must be viewed in light of the circumstances of the case. <u>Rothrock</u>, 20 F.3d at 712. Here, the case was on remand and had already been tried twice. Under those circumstances, another 14-month delay would be uncommonly long. While this was a death penalty case involving voluminous discovery and new counsel for Gibson, it had already been tried twice and Jaquays was familiar with the facts from prior representation of Lofton. Also, Jaquays was an experienced death penalty litigator. As previously discussed, the discovery was readily available for a substantial period of time prior to September 1991. As to the second factor, blame lies with both sides. The prosecution certainly was dilatory for failing to provide the discovery which was readily available to be turned over. However, Gibson acquiesced in the delay by not moving to compel the discovery and by agreeing to continuances, at least until May 1991. As to the third factor, Gibson did not show an interest in speeding along the third trial until almost 11 months after the remand from the Illinois Supreme Court. Then, in August 1991, when he was able to first bring his <u>pro se</u> motion to the court's attention, the court acted swiftly, appointing special counsel on the same day and holding a hearing and resolving the motion in less than a month. There is no present contention that once the pending motion was resolved and Gibson's personal desires for a speedy trial were evident that any further delays were improper.

As to the last factor, although there is a presumption of prejudice, the record does not support that Gibson was actually prejudiced. "Prejudice is gauged by considering the interests the right is designed to protect: '(i) to prevent oppressive pretrial incarceration; (ii) to minimize anxiety and concern of the accused; and (iii) to limit the possibility that the defense will be impaired.'" Rothrock, 20 F.3d at 712 (quoting Barker, 407 U.S. at 532). Here, Gibson was otherwise incarcerated on an unrelated conviction. Delays had no actual or potential effect of prolonging pretrial incarceration. There is nothing to indicate that Gibson's defense in the case was in any way hampered by detention. To the contrary, at least up until May 1991, Gibson was hoping the delay would be detrimental to the prosecution's case, not his defense.[14] As to anxiety and concern, generally that is a minimal consideration, especially where there is no impairment of one's defense. Ward, 211 F.3d at 361 (citing United States v. Jackson, 542 F.2d 403, 409 (7th Cir. 1976)). Perhaps anxiety is a greater factor when one is awaiting retrial in a case in which the death penalty had previously been imposed. On the other hand, delay in trying a death penalty case also means delay in any execution of such a sentence that might follow the trial. Thus, delay in this situation can have a

---

[14]Contrary to Gibson's assertion, advice to this effect did not violate Ill. Sup. Ct. R. 415(a) or Ill. R. Prof. Cond. 3.4. Moreover, a violation of a rule of professional conduct is not per se deficient performance for purposes of an ineffective assistance of counsel claim. See Brewer v. Aiken, 935 F.2d 850, 859-60 (7th Cir. 1991).

potential benefit that outweighs any increased anxiety. In any
event, there is no contention by Gibson that his anxieties and
concerns were particularly increased by the delay. Cf. Jackson,
542 F.2d at 409. In the present case, it cannot be found that
Gibson was prejudiced by the delay.

While the delay was uncommonly long, Gibson did not
express an interest in speeding the trial along until 11 months
after the remand. Thereafter, the delay pertinent to the present
claim only continued for a few more months. Both sides were to
blame for the delays and Gibson suffered no prejudice from the
delays. Weighing the four factors together, it cannot be found
that Gibson was denied the constitutional right to a speedy trial
by the delay that occurred. Cf. Rothrock, 20 F.3d at 712. Since
Gibson cannot succeed on a claim that his constitutional right to
a speedy trial was denied, he cannot satisfy the prejudice prong
of a claim of ineffective assistance by Jaquays or his counsel on
direct appeal. See Molina, 1997 WL 51444 at *3. Therefore, this
claim does not provide a basis for granting federal habeas corpus
relief.

IT IS THEREFORE ORDERED that the petition for a writ of
habeas corpus is denied. The Clerk of the Court is directed to
enter judgment in favor of respondent and against petitioner
denying the petition for writ of habeas corpus. If petitioner
wishes to appeal this order, he must file a Notice of Appeal to
the United States Court of Appeals for the Seventh Circuit with
the Clerk of the Court, United States District Court for the

Northern District of Illinois, 219 South Dearborn Street, 20th Floor, Chicago, Illinois 60604, within thirty (30) days of the entry of the judgment in this case. Any notice of appeal should also be accompanied by a request for a certificate of appealability, including a statement as to why a certificate should issue. <u>See</u> 28 U.S.C. § 2253; Fed. R. App. P. 22(b).

           ENTER:

                    *William T. Hart*

                    UNITED STATES DISTRICT JUDGE

DATED:   MAY *16* , 2001